OPINION
{¶ 1} Defendant-appellant, Landon S. Mitchell ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas entered upon a jury verdict convicting him of two counts of domestic violence, both felonies of the fourth degree in violation of R.C. 2919.25. Appellant also appeals the imposed consecutive sentences of 18 and 12 months incarceration.
 {¶ 2} On March 20, 2005, appellant was indicted by a Franklin County Grand Jury on one count of aggravated burglary, one count of kidnapping, and three counts of domestic violence. The indictment arose out of three separate incidents involving appellant and Jazmine Thomas ("Thomas"), appellant's girlfriend and mother of his child. The indictment alleged the incidents occurred on or about September 22, December 5, and December 6, 2005. The matter proceeded to a jury trial, and after appellee presented its case-in-chief, the trial court dismissed the aggravated burglary and kidnapping charges pursuant to Crim.R. 29. The jury returned a verdict of not guilty of domestic violence as contained in Count 5, and guilty of domestic violence as charged in Counts 2 and 4 of the indictment. At the sentencing hearing on May 18, 2006, the trial court sentenced appellant to 18 months on Count 2 and 12 months on Count 4, to be served consecutively.
 {¶ 3} Appellant timely appeals, and brings the following three assignments of error for our review:
 Assignment of Error One
 APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error Two
 THE EVIDENCE AGAINST THE APPELLANT WAS INSUFFICIENT TO SUSTAIN A JURY VERDICT OF GUILTY.
 Assignment of Error Three
 THE SENTENCE IMPOSED ON APPELLANT WAS INCONSISTENT WITH THE OVERRIDING PURPOSES OF OHIO FELONY SENTENCING.
 {¶ 4} For ease of discussion, we will address appellant's assignments of error out of order. In his second assignment of error, appellant challenges the sufficiency of the evidence. With respect to appellant's sufficiency of the evidence argument, the operative inquiry is whether the evidence is adequate to sustain a verdict. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386-387. When reviewing the sufficiency of the evidence, an appellate court must:
 * * * [E]xamine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 5} This test raises a question of law and does not allow the court to weigh the evidence. Thompkins, at 386; State v. Thomas (1982),70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, when reviewing the sufficiency of the evidence, an appellate court must accept the fact finder's determination with regard to the credibility of the witnesses. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Worrell, Franklin App. No. 04AP-410, 2005-Ohio-1521, at ¶ 41 ("In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support a conviction.").
 {¶ 6} In order to convict appellant of domestic violence as charged, the state must prove beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Appellant contends the state failed to present sufficient evidence that he caused physical harm to Thomas. Additionally, appellant contends the evidence used to convict him was "entirely unsupported and unreliable," and that Thomas' testimony is suspect because she continued to maintain a relationship with appellant after the alleged incidents.
 {¶ 7} First, we reiterate that in determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but rather, if believed, the evidence against a defendant would support a conviction. State v. West, Franklin App. No. 06AP-114, 2006-Ohio-5095; Worrell, supra. Thus, appellant's arguments relating to credibility will not be addressed under this assignment of error. To the extent appellant contends the state failed to provide sufficient evidence that he caused physical harm to Thomas, we disagree.
 {¶ 8} Physical harm to a person is defined to include any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3). "One does not have to cause serious injury to be guilty of domestic violence. A defendant may be found guilty of domestic violence if the victim sustains minor injuries or even no injuries at all." West, supra, at ¶ 16, citing State v. Blonski (1997),125 Ohio App.3d 103, 114, 707 N.E.2d 1168.
 {¶ 9} Thomas testified that in September 2005, she and appellant were housesitting and watching three pit bull dogs for a mutual friend who was out of town. Thomas had stayed at the house every night for about a week, and appellant had stayed there "some nights." (Tr. at 23.) On September 22, 2005, Thomas and appellant engaged in a verbal argument and appellant left. Thereafter, Thomas locked the doors to the residence. Appellant returned five to ten minutes later and began banging on the door, but Thomas refused to let him inside. Appellant wanted Thomas to give him some money that she was holding for him, so Thomas dropped it out the window. Appellant then stated that he wanted his clothes, and said to Thomas, "if you don't open this door, I'm going to beat your ass." Id. at 20. According to Thomas, appellant shut off the electricity to the house leaving it dark, and eventually, appellant kicked in the back door and went upstairs to a bedroom where Thomas was with their one-year old son. Thomas described that appellant "started punching me in my face. * * * I couldn't do nothing to him because I was holding my baby at the same time and the dog was up there and it was dark. * * * So like he was punching me in my face and he took me by my hair and he slammed me on the ground." Id. at 25. When Thomas was on the ground, the dog, which she previously let loose for protection, came into the room. Appellant "took the dog's face and he put it on [Thomas'] back. And he was like, bite that bitch." Id. The dog bit Thomas, and thereafter, appellant ran out of the room. Thomas ran outside whereupon she contacted the police. The police arrived, and Thomas was taken to the hospital.
 {¶ 10} Columbus Police Officer Rick Close responded to the domestic violence call on September 22, 2005. According to Officer Close, Thomas was "crying," and was "in obvious pain." Id. at 125. Though he did not observe any obvious signs of injury to Thomas' face or head, he did observe bite marks on her back, and Thomas provided Officer Close with a clump of her hair. Officer Close also observed that the rear doorframe appeared damaged.
 {¶ 11} Regarding the incident on December 5, 2005, Thomas testified that appellant took her purse, which contained her WIC coupons, and gave it to another woman named Shy. An argument about living arrangements and finances ensued between Thomas and appellant, and Thomas testified as follows:
 * * * And he started fighting me. When he pulled out a gun, I thought the gun was real. And that's when he started hitting me in the head with the gun. And the boy, Tone, grabbed him up off of me and that's [when] I went and called the police.* * *
Id. at 48.
 {¶ 12} Thomas explained that she did not sustain any injuries as a result of this incident, and she later discovered the gun was a BB gun.
 {¶ 13} Columbus Police Officer Robert Lagore responded on December 5, 2005 to a call indicating that a woman had been arguing with the father of her child, and she had been struck with a handgun in the face. According to Officer Lagore, appellant had already left the scene, but Thomas told him that appellant had spit in her face, slapped her, and eventually pulled a pistol out of his waistband and struck her in the head. Although he did not recall observing any injuries to Thomas, when asked to describe Thomas' demeanor, Officer Lagore stated, "[s]he was crying, very nervous. Her hands were shaking, trembling. She was upset over the incident." Id. at 146.
 {¶ 14} The jury found that the state proved beyond a reasonable doubt that appellant was guilty of domestic violence regarding the incidents that occurred on September 22 and December 5, 2005. We find that when viewed in a light most favorable to the prosecution, as is required, the evidence could convince the average mind of appellant's guilt beyond a reasonable doubt and is adequate to sustain the jury's verdict. Thomas' testimony, coupled with that of the testifying officers, if believed, provides sufficient evidence for the trier of fact that appellant caused Thomas physical harm. See, West, supra, at ¶ 17, citing State v.Dobbs (June 10, 1996), Highland App. No. 95-CA-875. Consequently, we overrule appellant's second assignment of error.
 {¶ 15} In his first assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 16} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v.Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v.Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v.Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 17} In essence, appellant argues that the state's case relied wholly on the testimony of Thomas, which was not credible. With respect to the September 22, 2005 incident, appellant directs us to the following discrepancies in the record. First, appellant directs us to the lack of evidence demonstrating that he had any prior contact with the dog that bit Thomas, or that the dog was trained to follow commands from appellant, despite Thomas' testimony that appellant commanded the dog to bite her. Second, appellant points to the lack of physical evidence showing injuries to Thomas' face and corroborating her testimony that she was kicked and punched in the face and head.
 {¶ 18} Regarding the December 5, 2005 incident, appellant again directs us to the lack of evidence establishing injury to Thomas, notwithstanding her testimony that appellant struck her in the head with a gun. Appellant suggests Thomas fabricated her testimony because she was angry with appellant for seeing another woman.
 {¶ 19} As previously stated, one does not have to have caused serious injuries to be guilty of domestic violence. A defendant may be found guilty of domestic violence if the victim sustains minor injuries or even no injuries at all. West, supra. Here, Thomas provided testimony about both incidents. Thomas described that on September 22, 2005, appellant punched her, kicked her, grabbed her by her hair and slammed her to the ground, and held a dog's face to her back and told the dog to "bite that bitch." (Tr. at 25.) Photographs showed bite marks to Thomas' back, and Officer Close testified that when he arrived Thomas was crying and "in obvious pain." (Id. at 125.) Officer Close also stated that Thomas provided him with a clump of her hair. Thomas explained that on December 5, 2005, she and appellant got into an argument, and appellant struck her in the head with a gun. Officer Lagore testified that when he arrived at the scene on December 5, 2005, Thomas was crying, shaken, and upset.
 {¶ 20} In spite of appellant's arguments to the contrary, we cannot conclude that Thomas' testimony is so unreliable as to be not credible as a matter of law. State v. Timmons, Franklin App. No. 04AP-840,2005-Ohio-3991. Appellant's theories were presented to, and rejected by the jury. Further, when reviewing appellant's manifest weight argument, we review the entire record and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. This jury heard the evidence and rendered a verdict of guilty on two counts of domestic violence, and not guilty on one count of domestic violence. These findings do not suggest a jury that clearly lost its way, but rather, a discerning jury that considered all the evidence before it. This does not present the exceptional case in which the evidence weighs heavily against a conviction. Accordingly, we overrule appellant's first assignment of error.
 {¶ 21} Appellant's third assignment of error challenges the sentence imposed by the trial court. Here, appellant avers the trial court "over-penalize[d]" him, and erroneously applied the principles of R.C.2929.11 in sentencing him to lengthy and consecutive sentences. (Appellant's Brief at 10.) According to appellant, in this circumstance the overriding purpose of R.C. 2929.11 can be achieved with concurrent sentences.
 {¶ 22} The Supreme Court of Ohio, in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856 held that various portions of Ohio's sentencing statutes unconstitutionally mandated judicial fact-finding for purposes of increasing presumptive sentences. Therefore, the Foster court severed the offending portions of the statute. The result is that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at 30. The court noted that excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. Id. at 29.
 {¶ 23} Though appellant contends his sentence is inconsistent with the purpose of Ohio's sentencing statutes, his argument fails. Initially, we note that appellant was informed at his sentencing hearing that maximum and consecutive sentences were being imposed, and no objection was raised. Therefore, appellant has waived all but plain error. City ofColumbus v. Brown, Franklin App. No. 05AP-344, 2005-Ohio-6102. Plain error is an obvious error that affects a substantial right.Yarbrough, supra, at 227, citing State v. Keith (1997),79 Ohio St.3d 514, 518. "Notice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28.
 {¶ 24} After Foster, trial courts have full discretion to sentence defendants within the statutory range and are not required to give reasons for imposing maximum, consecutive or non-minimum sentences. Here, the trial court's entry explicitly states, "[t]he Court has considered the purposes and principles of sentencing set forth in R.C.2929.11 and the factors set forth in R.C. 2929.12." (Entry at 1.) Further, the record reflects the trial court noted appellant's "relatively extensive criminal record." (Tr. at 229.) In reviewing a similar argument, this court recently stated:
 In its judgment entry of June 1, 2005, the court stated, in part: "The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12." Thus, the express language of the court's judgment entry belies defendant's claim that the trial court failed to consider the purposes of felony sentencing required by R.C. 2929.11 and 2929.12. See State v. Braxton, Franklin App. No. 04AP-725, 2005 Ohio 2198, at P27 (stating that "a rote recitation by the trial court that it has considered applicable factors under R.C. 2929.12 is sufficient for the trial court to satisfy its duty"); see, also, State v. Sharp, Franklin App. No. 05AP-809, 2006 Ohio 3448, at P6 (observing that a statement in a judgment entry stating that the court considered the purposes and principles of sentencing supports a conclusion that a trial court considered requisite statutory factors prior to the sentencing of the defendant); State v. Starkweather (Mar. 29, 2002), Ashtabula App. No. 2001-A-0006, 2002 Ohio 1471, appeal not allowed, 96 Ohio St. 3d 1470, 2002 Ohio 3910, 772 N.E.2d 1204 (stating that sentencing findings mandated by R.C. 2929.12 and 2929.14 "must appear in the judgment or somewhere on the record in the sentencing exercise").
State v. Daniel, Franklin App. No. 05AP-564, 2006-Ohio-4627, at ¶ 50.
 {¶ 25} Therefore, we find unpersuasive, appellant's argument that his imposed sentence is inconsistent with the purpose of R.C. 2929.11. Accordingly, we overrule appellant's third assignment of error.
 {¶ 26} For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BROWN and FRENCH, JJ., concur.